**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------
NEW ENGLAND JOINT BOARD OF UNITE HERE
LOCAL UNION 1208T AND LOCAL 1226T and KEVIN
GALVIN, JOSEPH MELLO and PAUL RAPOSA
on behalf of themselves and other similarly situated
employees                                                              **COMPLAINT**
                                                                       **[JURY TRIAL DEMAND]**

                              Plaintiffs

                        against

PATRIARCH PARTNERS, LLC
PATRIARCH PATNERS XIV, LLC


                        Defendants.
-----------------------------------------------------------------------

      NEW ENGLAND JOINT BOARD OF UNITE HERE LOCAL UNION 1208T AND

LOCAL 1226T ("Local 1208T and Local 1226T") on behalf of its bargaining unit members who

are former employees of Duro Textiles, LLC, Patriarch Partners, LLC, and Patriarch Partners

XIV, LLC, as a single employer, and Kevin Galvin, Joseph Mello and Paul Raposa on behalf of

themselves and other similarly situated non-bargaining unit employees by way of Complaint, by

and through their counsel, against Patriarch Partners, LLC and Patriarch Partners XIV, LLC

alleges as follows:


## **NATURE OF THE ACTION**

      1.     This is a civil action for collection of unpaid wages and benefits for sixty

(60) days pursuant to the Worker Adjustment and Retraining Notification Act of 1988

("WARN"), 29 U.S.C. §§ 2101-2109 et. seq. (the "WARN Act").

      2.     Local 1208T and Local 1226T bring this action on behalf of their

bargaining unit employees ("Bargaining Unit Employees"), and Kevin Galvin, Joseph Mello

and Paul Raposa (the "Representative Plaintiffs") bring this action on behalf of themselves and other similarly situated non-bargaining unit employees (the "Class" or "Other Similarly Situated Employees") all of whom were nominal employees of Duro Textiles, LLC ("Duro Textiles") and, pursuant to the WARN Act's single employer rule, Patriarch Partners, LLC ("Patriarch") and Patriarch Partners XIV, LLC ("Patriarch XIV", and collectively with Patriarch, the "Defendants") until they were terminated as part of, or as a result of a plant closing ordered by the Defendants. As such, each of the Defendants violated the WARN Act by failing to give the Plaintiffs at least 60 days' advance written notice of termination, as required by the WARN Act. Although the employees nominally worked for Duro Textiles, Patriarch and Patriarch XIV directly or indirectly owned, operated  and completely controlled all business decisions related to Duro Textiles and directly ordered the shutdown of Duro Textiles and accordingly, were the employer of the employees under the WARN Act's "single employer" provision.  As a consequence, Plaintiffs Local 1208T and Local 1226T on behalf of all bargaining unit employees who were terminated as part of the plant closing, and the Representative Plaintiffs, as well as the Class they seek to represent are entitled under the WARN Act to recover from each the Defendants jointly and severally, 60 days' wages and ERISA benefits, none of which has been paid.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104 (a)(5).

4.    This Court has personal jurisdiction over the Defendants because Defendants' principal place of business is in this district and Defendants transact business in this district. Venue is proper in this District pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

5.      At all relevant times, Local 1208T and Local 1226T have been labor organizations as defined by Section 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. 185, and the "affected employees' representative" as defined by 29 U.S.C. 2101 of the WARN Act and maintains its offices at Fall River, MA.

6.      Local 1208T and Local 1226T are authorized to maintain a lawsuit as independent legal entities under § 502(d)(1) of ERISA 29 U.S.C. § 1132(d)(1).

7.      Local 1208T and Local 1226T, as representatives of Defendants' bargaining unit employees who worked at or reported to the Facility (defined below), are authorized to bring suit on behalf of said employees for violation of the WARN Act under 29 U.S.C. § 2104(a)(5).

8.      Upon information and belief, at all relevant times, Duro Textiles was a Delaware corporation, authorized to do business in Massachusetts and maintained a facility consisting of two buildings approximately 200 yards apart located at 110 Chace Street, Fall River, MA 02724 and 206 Globe Mills Avenue, Fall River, MA 02724 (the "Facility").

9.      At all relevant times, Plaintiff Kevin Galvin was an employee who was employed by Defendants and worked at or reported to the Facility until his termination without cause in or about August 2016.

10.     At all relevant times, Plaintiff Joseph Mello was an employee who was employed by Defendants and worked at or reported to the Facility until his termination without cause in or about August 2016.

11.     At all relevant times, Plaintiff Paul Raposa was an employee who was employed by Defendants and worked at or reported to the Facility until his termination without cause in or about August 2016.

12.     Upon information and belief, at all relevant times, Defendant Patriarch was a Delaware corporation authorized to do business in New York with its principle place of business at 1 Broadway, 5th Floor, New York, NY 10004.

13.     Upon information and belief, at all relevant times, Defendant Patriarch XIV was a Delaware corporation authorized to do business in New York with its principle place of business at 1 Broadway, 5th Floor, New York, NY 10004.

14.     In or about August 2016, Defendants, as a single employer, ordered the termination, without cause, of approximately 79 bargaining unit employees at the Facility without providing Plaintiffs with 60 days' advance written notice required by the WARN Act.

15.     In or about August 2016, Defendants, as a single employer ordered the termination, without cause of approximately 53 Other Similarly Situated Employees without providing them with 60 days' advance written notice required by the WARN Act.

## CLAIM FOR RELIEF

16.     Local 1208T and Local 1226T and the Representative Plaintiffs repeat and re-alleges each and every allegation contained in paragraphs 1 through 14 as if set forth in their entirety.

17.     At all relevant times, the Defendants, as a single employer, employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by 20 U.S.C. § 2101 of WARN and employed more than 50 employees at the Facility.

18.    At all relevant times, each of the Defendants was the "employer," of the Bargaining Unit Employees and Representative Plaintiffs as that term is defined in 29 U.S.C. § 2101(a)(1) of the WARN Act and 20 C.F.R. § 639.3(a).

19.    The Defendants constituted a "single employer" of the Bargaining Unit Employees and Representative Plaintiffs and the Class members in that, among other things:

(a)    Patriarch and Patriarch XIV shared common ownership with Duro Textiles: Specifically, Patriarch and Patriarch XIV directly or indirectly owned Duro Textiles.

(b)    Duro Textiles was directly or indirectly, managed and controlled by Defendants: Specifically, Lynn Tilton ("Tilton") was the sole decision maker of Patriarch and of Patriarch XIV and was also the sole member of Duro Textiles' Board of Managers.  At all relevant times, Tilton, despite her position on Duro Textiles' Board of Managers, acted in the interests of Defendants, rather than in the interest of Duro Textiles.

(c)    Patriarch purchased Duro Textiles as one of its portfolio companies in 2002.

(d)    Patriarch subsequently sold shares of Duro Texiles to entities and/or individuals over which Patriarch maintained complete control.

(e)    Patriarch and Patriarch XIV shared common officers and directors with Duro Textiles: Specifically, Tilton, who was the sole member of Duro Textiles board of managers, was also the CEO and indirect owner of Patriarch and the CEO and indirect owner of 100% of the shares of Patriarch XIV, together with a trust for the benefit of Tilton's daughter.

(f)    Duro Textiles' personnel policies were created and put into place by Defendants.

(g)    Patriarch and Patriarch XIV, through Tilton, at all times maintained de-facto control over the operations and hiring policies of Duro Textiles.

(h)    In 2006, the chief executive officer and the chief financial officer of Duro Textiles, Edward Ricci and Paul DeCristofaro respectively, were hired directly by, and reported to, Patriarch.

(i)    Lynn Tilton was the sole decision-maker with respect to any major issues affecting Duro Textiles, Patriarch or Patriarch XIV.

(j)    On January 27, 2014, Tilton, on behalf of Patriarch and Patriarch XIV, terminated Edward Ricci as CEO of Duro Textiles by instructing Vincent DeVito, the Director of Credit at Patriarch, to tell Peter Ricci, who was the Vice President of Human Resources at Duro Textiles, to terminate Edward Ricci.

(k)    In late 2014, the CEO and CFO of Duro Textiles, Stewart Little and Frank Tarantino respectively, were once again hired directly by Patriarch.

(l)    Duro Textiles was directly or indirectly owned operated and controlled by Patriarch and Patriarch XIV.

(m)    Upon information and belief, all borrowing activity by Duro Textiles, required prior approval from Patriarch and Patriarch XIV.

(n)    The annual practice of Duro Textiles was to shut down the Facility for the two weeks following July 4th. In 2016, following the annual two week shutdown, Duro Textiles was scheduled to reopen on July 17, 2016.  Instead of reopening the Facility in or about early July 2016, Brian Stephen, the senior legal director at Patriarch, together with Vincent DeVito the Director of Credit at Patriarch, ordered the indefinite "furlough" of all of Duro Textiles' employees, which included Bargaining Unit Employees, Representative Plaintiffs and the Class.

(o)    Upon information and belief, Brian Stephen received the instructions referred to in paragraph (n) above directly from Tilton.

(p)     Patriarch and Patriarch XIV, through Tilton, exercised complete control over the labor decisions concerning Duro Textiles' employees, including the decision to shut down the Facility and terminate the employment of the Bargaining Unit Employees, Representative Plaintiffs and Class members in or about August 2016 and thereafter.

(q)     The decision to furlough all of the employees at the Facility after July 17, 2016 was made by Patriarch and Patriarch XIV, through Tilton, while she purported to review the possibility of a sale of Duro Textiles.

(r)     In June-July 2016, Patriarch purported to engage in an attempt to sell Duro Textiles.

(s)     On July 13, 2016 and July 27, 2016, a presentation of the Facility to a potential buyer occurred with Vincent DeVito of Patriarch present at those presentations. At the presentations, it was made clear to the potential buyers that Patriarch was the only party with any say in the negotiations, while the CEO and CFO of Duro Textiles were present only in order to provide information about Duro Textiles to the purchasers which might facilitate a potential sale, should Tilton decide to go through with sale of same.

(t)     Upon information and belief, although the potential buyer offered to purchase Duro Textiles under terms which would have preserved the class members' jobs, Patriarch and Patriarch XIV through Tilton, decided to refuse the offer and shut down the company instead.

(u)     A purported WARN Notice that was sent to the employees of Duro Textiles was drafted by Patriarch's legal counsel without the knowledge of Duro Textiles' management.

(v)     On or about August 12, 2016, Brian Stephen of Patriarch sent an email to Duro Textiles' senior executives with the WARN notice by Patriarch as an attachment,

7

instructing those executives to lay off all the employees and to distribute the notice Patriarch's legal counsel had drafted.

(w)    Patriarch and Patriarch XIV exercised complete control over the labor decisions concerning the Bargaining Unit Employees, Representative Plaintiffs and Class members, including the decision to shut down the Facility and terminate their employment in or about August 2016 and thereafter.

(x)    As shown above, the decision to shut down the Facility without providing proper WARN notice was made by Patriarch and Patriarch XIV.

(y)    Attached as Exhibit A, is a complaint filed by the Securities and Exchange Commission against *inter alia* Tilton, Patriarch and Patriarch XIV, the contents of which are incorporated herein by reference in so far as such allegations relate to and support the "single employer" allegations asserted in this matter.

20.    At all times relevant herein, Local 1208T and Local 1226T represented the Bargaining Unit Employees pursuant to a collective bargaining agreement which existed between Local 1208T and Local 1226T and Duro Textiles.

21.    At all times relevant herein, the Bargaining Unit Employees were "employees" of Defendants as defined by 29 U.S.C. § 2101 of the WARN Act.

22.    At all times relevant herein, Local 1208T and Local 1226T were the "representatives" of the Bargaining Unit Employees  who were employees of Duro Textiles as defined by 29 U.S.C. § 2101 of  the WARN Act.

23.    In or about August 2016, the Defendants ordered a "plant closing" as that term is defined by 29 U.S.C. § 2101(a)(2) and (3), by ordering the termination of the employment of approximately 79 Bargaining Unit Employees.

24.    Defendants' actions at the Facility resulted in an "employment loss" for at least thirty-three percent of its employees, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

25.    Defendants' permanent termination of the Bargaining Unit Employees and the Class constituted a "Plant Closing" as defined by 29 U.S.C. § 2101 of the WARN Act.

26.    The Bargaining Unit Employees and Class members terminated by Defendants as a result of Defendants executing a Plant Closing at the Facility in or about August 2016 were "affected employees" as defined by 29 U.S.C. § 2101 of the WARN Act.

27.    Pursuant to Section 2102 of WARN and 20 C.F.R. § 639, Defendants were required to provide Local 1208T and Local 1226T at least 60 days prior written notice identifying the employees who would be terminated and the dates of their terminations.

28.    Defendants failed to give Local 1208T and Local 1226T, the representative of the Bargaining Unit Employees, at least sixty (60) days prior written notice, identifying which employees would be terminated and the dates of their termination as required by the WARN Act § 2102 and 20 C.F.R. § 639.1 - § 639.10 et. seq.

29.    The Defendants failed to pay the Bargaining Unit Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

30.    As a result of Defendants' failure to pay the wages, benefits and other monies, the Bargaining Unit Employees were damaged in an amount equal to the sum of their

unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of their terminations.

## CLASS ACTION ALLEGATIONS – 29 U.S.C. § 2104 (a)(5)

31.     Pursuant to the WARN Act, 29 U.S.C. § 2104 (a)(5), the Representative Plaintiffs maintain this action on behalf of themselves and on behalf of each of the Other Similarly Situated Employees.

32.     Each of the Other Similarly Situated Employees is similarly situated to the Representative Plaintiffs in respect to his or her rights under the WARN Act.

33.     Defendants, as a single employer, were required by the WARN Act to give the Plaintiffs and the Other Similarly Situated Employees at least 60 days advance written notice prior to their terminations.

34.     Prior to their terminations, neither the Plaintiffs nor the Other Similarly Situated Employees received written notice that complied with the requirements of the WARN Act.

35.     Defendants failed to pay the Plaintiffs and the Other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

## CLASS ACTION ALLEGATIONS RULES 23 (a) and (b)

36.      The Representative Plaintiffs bring this action on their own behalf and, pursuant to the Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the

Other Similarly Situated Employees who worked at the Facility and were terminated as part of the Plant Closing ordered by the Defendants, as a single employer, on or about August 12, 2016 and thereafter.

37.     The persons in the Class identified above ("Class Members") are so numerous that joinder of all Class Members is impracticable.

38.     There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

39.     The claims of the Representative Plaintiffs are typical of the claims of the Class.

40.     The Representative Plaintiffs will fairly and adequately protect the interests of the class.

41.     The Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the contest of WARN Act litigation, where individual plaintiffs and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

43.     There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a) Whether the Class Members were employees of the Defendants who worked at or reported to the Facility;

11

(b) Whether Defendants, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice;

(c) Whether the Defendants may rely on the WARN Act's "unforeseeable business circumstances" or "Faltering company" defenses.

(d) Whether Defendants' failure to provide 60 days' notice should render them liable to the Class Members for 60 days' pay and benefits.

44.    Local 1208T and Local 1226T on behalf of the Bargaining Unit Employees, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

45.    At or about the time that the Bargaining Unit Employees were discharged or shortly thereafter, Defendants also discharged the Class Members.

46.    Each of the Class Members is similarly situated to the Representative Plaintiffs in respect to their rights under the WARN Act.

47.    At all relevant times, Defendants employed more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States as defined by the WARN Act and employed more than 50 employees at the Facility.

48.    At all times relevant, each Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a).

49.    On or about August 12, 2016 and thereafter, the Defendants ordered a "plant closing" at the Facility as that term is defined by 29 U.S.C. § 2101(a)(2).

50.     The Bargaining Unit Employees and the Other Similarly Situated Former Employees who were terminated by Defendants as a result of Defendants ordering a plant closing at the Facility on or about August 12, 2016  and thereafter were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

51.     The plant closing at the Facilities resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees as well as 33% of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by the WARN Act.

52.     Each of the Bargaining Unit Employees and Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

53.     Pursuant to Section 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 <u>et seq.</u>, Defendants were required to provide at least 60 days prior written notice of the terminations.

54.     Defendants failed to provide at least sixty (60) days prior written notice to Local 1208T and Local 1226T on behalf of the Bargaining Unit Employees concerning their terminations.  Further Defendants failed to provide at least sixty (60) days prior written notice to the Class Members of their terminations.

55.     The Defendants failed to pay the Bargaining Unit Employees and Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

56.     As a result of Defendants' failure to pay the wages, benefits and other monies as asserted above, the Bargaining Unit Employees and Class Members were damaged in

an amount equal to the sum of the their unpaid wages, accrued holiday pay, accrued vacation

pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60)

calendar days after the date of their terminations.

WHEREFORE, the Local 1208T and Local 1226T and the Representative Plaintiffs

demand judgment against the Defendants as follows:

a.    An amount equal to the sum of all of the Bargaining Unit Employees' and

Class Members' : unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued

vacation pay, pension and 401 (k) contributions and other ERISA benefits, for sixty (60) days

following the member employee's termination, that would have been covered and paid under the

then applicable employee benefit plans had that coverage continued for that period, all

determined in accordance with the WARN Act, 29 U.S.C. §2104(a)(1)(A);

b.    Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the

WARN Act, 29 U.S.C §2104(a)(5), Representative Plaintiffs and the Class Members constitute a

single class;

c.    Interest as allowed by law on the amounts owed under the preceding

paragraphs;

d.    Appointment of the undersigned attorneys as Class Counsel;

e.    Appointment of the Representative Plaintiffs as Class Representatives;

f.    Payment of reasonable compensation to the Representative Plaintiffs for

their services as such;

g.    The reasonable attorneys' fees and the costs and disbursements the

Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C.

§2104(a)(6).

h.    Such other and further relief as this Court may deem just and proper

Date: March 22, 2017

BY: _____/s/_____

      LANKENAU & MILLER, LLP
      Stuart J. Miller (SJM 4276)
      132 Nassau Street, Suite 1100
      New York, NY 10038
      P: (212) 581-5005
      F: (212) 581-2122

      THE GARDNER FIRM, P.C.
      Mary E. Olsen (OLSEM4818)
      Vance McCrary (MCCRM4402)
      210 S. Washington Ave.
      Mobile, AL  36602
      P: (251) 433-8100
      F: (251) 433-8181

      Cooperating Counsel for
      THE NLG MAURICE AND JANE SUGAR
      LAW CENTER FOR ECONOMIC AND
      SOCIAL JUSTICE, a non-profit law firm
      4605 Cass Ave, Second Floor
      Detroit, Michigan 48201
      P: (313) 993-4505
      Attorneys for Local 1208T and Local 1226T and the
      Representative Plaintiffs